UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| L. S. PPA, MR. AND MRS. F.S. | } |
| | } |
| PLAINTIFFS | } CIVIL ACTION NO. |
| | } 3:02CV1386(SRU) |
| V | } AUGUST 10, 2005 |
| NEW FAIRFIELD HIGH SCHOOL, NEW | } |
| FAIRFIELD BOARD OF EDUCATION, | } |
| CHRIS HOFFMAN AND JOSEPH GALLUCCI, | } |
| IN THEIR OFFICIAL CAPACITY | } |
| | } |
| DEFENDANTS | } |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

I.  **INTRODUCTION**

This matter is before the Court as Plaintiff's Motion for Summary Judgment on Counts one (1) and Four (4) of the Complaint against the Defendants for the deprivation of Plaintiff's rights secured by Title IX of the Educational Amendments of 1972, as amended, 20 U.S.C. §1681 et seq., under color of law. 42 U.S.C. §1983.

The Plaintiff was a student enrolled in New Fairfield High School (NFHS) during the 2000-01 school year. The Defendants Gallucci and Hoffman were respectively the Principal and Assistant Principal at NFHS during that school year. The Defendant New Fairfield Board of Education operates a local Board of

Education under the laws of the State of Connecticut and owns and operates the NFHS and employed both the Defendant Gallucci and the Defendant Hoffman during the 2000-01 school year.  The Defendant school district is a recipient of federal financial assistance form the U.S. Department of Education for its special education programs, Chapter I programs and various other programs.

The Plaintiff was the recipient of numerous instances of pronounced pattern of harassment on the basis of her sex from other NFHS students throughout the 2000-01 school year.  Plaintiff repeatedly reported the harassment to Defendants that included sexually offensive verbal harassment, physical assaults, vulgar and sexually offensive graffiti that referred to her that was located in the female bathrooms at NFHS, having her picture and home telephone number posted on several posters throughout NFHS with sexually vulgar comments about her.  However, the Defendants took little or no action against the perpetrators of incidents at NFHS reported by the Plaintiff.  Defendants' internal investigation often referred to the reported episodes as "catty girl stuff."

As the direct and proximate result of the Defendants' refusal and/or inability to take appropriate action in response to Plaintiff's repeated complaints and request for assistance to relieve her from constant peer to peer sexual harassment, Plaintiff attempted suicide during March, 2001, entered counseling and therapy for the emotional abuse and trauma sustained, and transferred to a private high school commencing with the 2001-02 school year where Plaintiff remained until she graduated during June, 2004.  Plaintiff and her family have

incurred costs for high school, counseling, medication, and Plaintiff has suffered emotional distress and other psychological trauma and she has continued to receive professional care and treatment, to date.

## II. ARGUMENT

### A. Applicable Summary Judgment Standards

The provisions of the *Federal Rules of Civil Procedures Rule 56 (a), (c),* provide *inter alia*, that a party is entitled to summary judgment if it is determined by the Court that there are no material facts in dispute and the party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby,* 447 U.S. 242, 256, 106 S. Ct. 2505 (1986). Summary Judgment may be granted by the Court, "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." *Miner v. Glenn Falls,* 999 F. 2d 655, 661 (2d Cir. 1993) (citations omitted). A dispute over a material fact occurs "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Aldrich v. Randolph Central School Dist.,* 963 F. 2d 520, 523, (2d Cir.) *cert. den.* 506 U.S. 965 (1992). The Court is required to resolve "all ambiguities and draw all inference in favor of the non-moving party in order to determine how a reasonable jury would decide." *Aldrich, supra,* at 523. Summary judgment is appropriate if a non-moving party "has failed to make a sufficient showing on an essential element of (its) case with respect to which (it) has the burden of proof." *Celotex Corp. v. Caltrett,* 477 U.S. 317, 323, 106 S. Ct

2548 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Malfucci* 923 F. 2d 979, 982 (2d Cir.), *cert den.* 502 U.S. 849 (1991). However, "(t)he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of any material fact." *Anderson v. Liberty Lobby,* 477 U.S. at 247-48 (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, supra,* at 248. In opposing a motion for summary judgment, the non-moving party may not assert mere denials but must "set forth specific facts showing that there is a genuine issue for trial". See, *D'Amico v. City of New York,* 132 F. 3d 145, 149 (2d Cir. 1998).[1]

### B. Applicable Title IX Standards

Title IX provides <u>inter alia</u> that "no person shall, on the basis of sex, be excluded from participating in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. §1681(a). An implied cause of action for money damages in Title IX cases has been recognized by the Supreme Court for cases involving intentional discrimination. <u>Franklin v. Gwinnett County Public Schools</u>, 503 U.S. 75,

---

[1] See, <u>Rossi v. West Haven Board of Education,</u> Civil Action No. 3:03 CV1247(MRK) Slip. Op. @3, (D.Conn. 3/7/05) (collecting cases on standards for granting motions for summary judgment.).

112 S. Ct 1028, 1038 (1992). A school district may be liable when a school official who has at least minimum authority to address the alleged discrimination, had knowledge of the alleged sexual harassment in school, was empowered to institute corrective measures, but failed to adequately respond. See, Davis v. Monroe County Bd. of Ed., 526 U.S. 629, 646-48; 119 S. Ct. 1661 (1999). See, Gebser v. Lago Vista Indep. Sch. Dist. 524 U.S. 274, 118 S. Ct 1989, 1999 (1998). The school district must have actual notice of the alleged discrimination before it can be liable for intentional discrimination. Davis, supra; Gebser, 524 U.S. at 287-89, 118 S. Ct at 1998-99. [2] Title IX's provisions have been construed to proscribe peer to peer or student to student sexual harassment occurring in school and during school hours and provides a remedy in the form of damages. Davis v. Monroe County Bd. of Ed., 526 U.S. 629, 642-46, 199 S. Ct 1661 (1999)

It should be immaterial whether the sexual harassment was by students who were of the same or opposite sex of the Plaintiff, See e.g. Oncale v. Sundowner, 523 U.S. 75 (1998), provided the Defendant school district had actual notice of the pattern of sexual harassment by NFHS students against the Plaintiff that had occurred during school hours and Defendant had failed to properly act. Davis, supra at 644-48. Since at least 1997, the U.S. Department of Education's Office of Civil Rights (OCR) has issued policy guidance to federal fund recipients, such as the Defendant school district, on sexual harassment issues that are likely to

occur in a school setting by school employees, other students, or third parties. 62 Fed. Reg. 12034, 12040 (1997). The U. S. Department of Education OCR has periodically updated its policy guidelines. Further, the State Department of Education had issued its own policy guidance to local boards of education such as Defendant New Fairfield Board of Education on sexual harassment in schools. State Department of Education Circular Letters C-14, C-23 and C-28. For example in Department of Education Circular Letter C-28 dated June 4, 1999, the State Department of Education informed local school districts of the U.S. Supreme Court's decision in Davis v. Monroe County BOE and how local school districts could be liable for violations of Title IX's proscription on sexual harassment in public schools if the school district had actual knowledge of the harassment or failed to undertake appropriate measures to remedy the harassment. Circular Letter C-28 reminded local school districts of the issuance of Circular Letter C-23 (1/30/98) that no student should have to suffer the indignities of harassment which jeopardize their right to a free public education.

    **C.**    **The Defendant Had Actual Knowledge of Peer to Peer Harassment of the Plaintiff by Students at NFHS**

The Defendants had knowledge that the Plaintiff had been the subject harassment on the basis of her sex throughout the 2000-01 school year. Immediately prior to the commencement of the 2000-01 school year, the Plaintiff

---

[2] This Title IX standard does not affect a Plaintiff's ability to collect damages as a mater of state law such as those allegations set forth in Counts Two and Three of

had received a series of threatening e-mail messages and the Plaintiff's parents met with the Defendant Gallucci, the NFHS Principal, and the Defendant Hoffman, the NFHS, Assistant Principal, to discuss their concerns. Hoffman Deposition pp. 14-15 (8/6/04). Deposition of Dr. Gallucci p. 49 (11/10/04). Defendant Gallucci recalled an incident whereby Defendant Hoffman had intervened in a verbal and physical altercation around October, 2000 between the Plaintiff and another NFHS student named Lyndsey D(Angelo. Deposition of Dr. Gallucci pp. 24-25 (11/10/04); Hoffman Deposition pp. 36-37 (8/6/04). The Defendant Gallucci was in receipt of a letter dated November 11, 2000 from Plaintiff's father expressing concerns over Plaintiff's safety at NFHS and complaining about sexually explicit graffiti in the girls' bathroom that referenced the Plaintiff. Deposition of Dr. Gallucci pp. 45, 77, 81 (11/10/04). In fact, Dr. Gallucci prepared an addendum to the Plaintiff's student file dated June 16, 2001 that chronicled the litany of concerns and complaints involving the Plaintiff that had occurred throughout the 2000-01 school year, Deposition of Dr. Gallucci pp. 77, 81 (11/1004), Attachment G; and he was aware that Defendant Hoffman had prepared a memo dated August 6, 2001 that detailed over twelve (12) instances of peer to peer issues involving the Plaintiff and other NFHS students. Deposition of Dr. Gallucci p. 52 (11/1004) Attachment F. The Defendants were aware of a poster that had been posted at NFHS containing Plaintiff's picture and the picture of another female student at NFHS, along with home telephone numbers and graphic sexually offensive references to both

---

the Complaint. Gebser, 524 U.s. at 285-90 118 S. Ct at 1997-99.

students.  Hoffman Deposition pp. 76-79 (8/6/04); Deposition of Dr. Gallucci pp. 47, 74-75 (11/10/04) Attachment P.  The Defendants were aware that the Plaintiff spent her lunch time in the NFHS office assisting a school secretary who had taken her "under her wings", rather than eat in the school cafeteria because she was nervous and uncomfortable about her safety in that setting, as well as in the hallways.  Hoffman Deposition pp. 44-46 (8/6/04).  Defendant Hoffman was aware that Plaintiff was under severe duress and stress and had feared for her safety, Hoffman Deposition p. 71 (8/6/04), as the direct and proximate result of the peer to peer harassment that had occurred at NFHS throughout the 2000-01 school year.  The Defendants were aware that Plaintiff's locker at NFHS had been vandalized and her personal property and books were removed.  Deposition of Dr. Gallucci p. 44.

In response to Plaintiff's "daily requests" for Defendants assistance with the constant harassment, Plaintiff's Deposition pp. 88, 92 (2/18/04), the Defendants either referred to the incidents as "catty girl stuff," Plaintiff's Deposition pp. 85-86 (2/8/04) or Defendants' told Plaintiff that she was in the school office too much and she had to return to class.  Plaintiff's Deposition pp. 69, 85-86, 88-89, (2/18/04).  Defendant Gallucci testified that in retrospect he could have handled things differently, in particular in response to Plaintiff's parents that the school administration was not taken enough action in the form of sterner disciplinary measures to stop the harassment of the Plaintiff.  Deposition of Dr. Gallucci p. 28 (11/10/04).

In Davis v. Monroe County Bd. of Ed 526 U.s. 629 (1999), the U.S. Supreme Court recognized that Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. §1681 et seq. as amended, applied to student to student or peer to peer sexual harassment that occurred in a public school setting. Davis, supra at 643-44. However, before a school district could be liable for damages, the Davis court required the school district to have actual knowledge that the student to student harassment was in fact occurring in school during school hours or activities. Davis, supra, at 645-47. When the "...misconduct occurs during school hours and on school grounds, ... the misconduct is taking place 'under' an operation of the funding recipient. See Doe v. University of Illinois, 138 F. 3d at 661. In these circumstances the (federal financial) recipient retains substantial control over the context in which the harassment occurs. More importantly, however, in this setting the Board exercises significant control over the harasser;" Id. Davis supra at 646-47; and therefore, the school district should be liable for its own failure to act since the "harasser is under the school's disciplinary authority."

In the present matter, the Court should find that there is no material fact in dispute that the Defendants were in fact aware of the constant harassment sustained by the Plaintiff from her peers at NFHS, and they either failed to act at all in response to her "daily" complaints, or failed to adequately act in response to the complaints presented by the Plaintiff and her parents involving repeated, persuasive, severe and objectively offensive acts of sexual harassment, Davis supra @ 654; harassment that exceeded "simple acts of teasing and name calling

among school children," that may not be actionable.  <u>Davis</u> supra @ 652-53.  The Plaintiff was not required to attend school and see herself referred to by name as a "suicidal bitch," a "slut," or as someone who provides oral sex, masturbates or has STD's (sexually transmitted diseases), <u>Plaintiff's Deposition</u> p. 50 (2/18/04). <u>Marvin Deposition</u> pp. 14-15 (3/8/05), <u>Attachment L;</u> as condition of receiving a free public education from the Defendants.  Instead, once the Defendants were made aware of specific allegations, they were empowered by their own Disciplinary Guidelines set forth in the <u>2000-01 Parents' and Students' Handbook Attachment E,</u> to impose disciplinary measures up to ten (10) days out of school suspension for fighting, assaults, verbal abuse, willful damage to properly, bullying, assaultive behaviors or threatening behaviors as more fully set out on pages twenty-eight (28) to thirty-five (35) of the 2000-01 NFHS <u>Student Handbook.</u> However, in response, the Defendants expressed regret and stated that things in retrospect could have been handled differently.  <u>Deposition f Dr. Gallucci</u> p. 28 (11/10/04).  That regret, however, did not prevent the Plaintiff from the feelings of depression, pain, fear, that culminated in a suicide attempt on March 18, 2001, permanent emotional scars, and requiring that she transfer to another school the following school year per Dr. Kessler's professional recommendation.  <u>Plaintiff's Deposition</u> pp. 69, 86-91, (2/12/04); <u>Marvin Deposition</u> pp. 36-37, 38-39 (3/8/05); <u>Burrachio Deposition</u> pp. 22, 37, 42, 47-50, 51-52 (6/25/04); <u>Dr. Kessler's Letter, Attachment B and C;</u> <u>Danielle Quigley Letter, Attachment A; Danbury Hospital Records, Attachment M.</u>

### D. The Court Should Find Defendant's Were Deliberately Indifferent To The Sexual Harassment Sustained by the Plaintiff at NFHS

In <u>Davis,</u> the Supreme Court concluded that in addition to actual knowledge of the sexual harassment, the school district had to be deliberately indifferent, before it could be held liable under Title IX. <u>Davis,</u> supra at pp. 648-49. While the Supreme Court recognized that it would be difficult to formulate a hard and fast absolute rule that should cover all situations, <u>Davis,</u> supra at 649, the Court stated that 'deliberate indifference' could be still found if the school district's response to sexual harassment allegations was clearly unreasonable given the known circumstances. <u>Davis,</u> supra @ 648-650. In developing a flexible and reasonable response to the known circumstances, the <u>Davis</u> Court believed that a proper standard of reasonableness was to evaluate the disciplinary measures available to the school and the degree of control a school should exercise over students, as well as an examination of the school's response to the allegation. <u>Davis</u> supra pp. 649-50.

In the present matter, the Plaintiff testified at her deposition that she had presented "daily" complaints to the Defendants. <u>Plaintiff's Deposition</u> p. 88-89 (2/18/04). Defendant's Hoffman and Gallucci each prepared their own respective memorandum that chronicles at least twelve (12) incidents involving the Plaintiff and other NFHS students, <u>Deposition of Dr. Gallucci</u> p. 52 (11/10/04); <u>Attachments F and G,</u> thereby corroborating at least some of Plaintiff's complaints. However, with the exception of one or two instances where an NFHS student might have been arrested and another one or two instances whereby an

11

NFHS student might have received a one day <u>de facto</u> or <u>de jure</u> suspension, <u>Hoffman Deposition,</u> pp. 37-38, 79 (8/6/04); <u>Deposition of Dr. Gallucci</u> p. 25, 28, 31-32, (11/10/04) none of the available Disciplinary Guidelines set forth in the <u>2000-01NFHS Parents' and Students' Handbook</u> were utilized or if utilized they were not effective in stopping the daily campaign of sexual harassment by NFHS students.

      The Defendant Hoffman readily acknowledged that he had considered the Plaintiff's repeated complaints to be "catty girl stuff". <u>Hoffman Deposition</u> pp. 39-40 (8/6/04). The Plaintiff's friend Nicole Marvin had testified at the deposition that she had found that remark by the Defendants to be "degrading" especially in view of all the comments and physical or verbal assaults that occurred. <u>Marvin Deposition</u> pp. 40-41 (3/8/05). The Plaintiff herself believed that there was never a 'catty girl stuff' concept that would ever exonerate her peers at NFHS especially since the harassment had been continuous, "hurtful", and referred to her as a "suicidal bitch" in sexually offensive graffiti. This could hardly be considered "catty girl stuff." <u>Plaintiff's Deposition</u> pp. 91-94 (2/18/04). As Plaintiff's treating therapist Dawn Burrachio stated, the harassment and bullying sustained by the Plaintiff at NFHS was not just evil, it was heinous and resulted in emotional scars that would not go away. <u>Burrachio Deposition</u> pp. 51-52 (6/25/04). For the Defendants to acknowledge that they were aware that Plaintiff was under severe duress, stress, and feared for her safety at NFHS, based upon her concerns and those presented by her parents, <u>Hoffman Deposition</u> pp. 70-71 (8/6/04), <u>Deposition of Dr. Gallucci</u> pp. 84-85 (11/10/84), <u>Attachments K and L,</u> and then take no action that would

effectively eliminate the harassment, should allow the Court to find that the Defendants were deliberately indifferent to the then known harassment that they had observed, investigated and/or was reported to them by the Plaintiff, Nicole Marvin, and Plaintiff's parents.

The Court should find as a matter of law, that the Defendants were deliberately indifferent to the repeated episodes of sexual harassment of the Plaintiff by her peers at NFHS throughout the 2000-01 school year.

> **E. The Court Should Find that the Defendant Had Deprived the Plaintiff of Rights Secured by Title IX in Violation of 42 U.S.C. §1983.**

The Plaintiff has alleged that her federally secured rights to a safe educational environment free from sexual harassment under Title IX were violated by the Defendant, under color of law. Complaint ¶ 42 to ¶45. The Defendants have denied the substance of the allegations. In order to establish liability under 42 U.S.C. §1983, the Plaintiff must identify a pattern or practice of the school district that caused the deprivation of a federal right such as those secured by Title IX. Board of County Commissioner v. Brown, 520 U.S. 397, 403, 117 S. Ct 1382, 1388 (1997). There must be a showing that the Defendant acted with deliberate indifference to the know or obvious consequences. Board of County Commissioners supra at 407.

In the present matter, the Plaintiff presented "daily" complaints to the Defendants regarding allegations of sexual harassment, Plaintiff's Deposition pp. 88-89 (2/18/04) and they either relegated the claims to "catty girl stuff" or asked

her to eave the office or sent her back to class.  Plaintiff's Deposition pp 69, 85-87 (2/18/04).  Through their inaction or ineffective response to Plaintiff's complaints of harassment, the Defendants failed to prevent the deprivation of Plaintiff's known rights to a safe educational environment, one that would be free from harassment, since Defendants had received notice of Plaintiff's claims.  Davis, supra.  Defendants knew that several students at NFHS were either verbally harassing the Plaintiff, physically assaulting her, or referring to her in vulgar and sexually offensive manner either verbally, through the graffiti in the bathroom, and the poster posted in the hallway, of NFHS.  In fact, the Defendants chronicled at least twelve (12) instances through their own memoranda dated June 16, 2001 and August 6, 2001, Attachments F and H, as well as correspondence from Plaintiff's father dated March 11, 2000.  Attachment I.

In 1998, the Second Circuit decided Bruneau v. South Cartright Central School Dist. 163 F. 3d 749 (2d Cir 1998) cert. den. 526 U.S. 1145 (1999).  In Bruneau, the Second Circuit decided, at that time, that Title IX, not Section 1983, provided the vehicle for the enforcement of rights because §1983 is not available for violation of all federal statutes.  Bruneau, 163 F. ed at 756.  The Second Circuit precluded at §1983 claim that was predicated upon violations of the Equal Protection clause.  Id. at 757-58.  To the extent Defendants argue that Bruneau precludes a §1983 claim, the Court should reject that argument.

In the present matter, the Plaintiffs have not alleged a violation of the Equal Protection clause as the basis to the 42 U.S.C. §1983 claim.  Instead, the

Complaint ¶43 and 44, 45 have alleged that Plaintiff's right to a safe school environment, free from sexual harassment as guaranteed by Title IX was violated by the Defendant's actions and omissions, under color of law.  Courts have allowed a §1983 claim coupled with a Title IX claim to proceed if that claim was predicated upon a denial of a federally secured right in violation of the Due Process clause.  A.R. v. Portland Bd. of Ed., Civil Action No. 3-98-cv-745 (JCH) slip op. 12-14 (D.Conn. 1999).  In A.R. the Court found that if there was an allegation of a federally secured right and that right was deprived by operation of law, then the Plaintiff should be allowed to proceed on that claim if predicated upon a Due Process violation.  A.R. v. Portland, slip op at pp. 12-14. (citing Flagg Bros. v. Brooks 436 U.S. 149, 156-57 (1978)).  While Plaintiff's complaint did not identify per se which provision of the Constitution was violated, she did allege that her right to a safe school environment, free from sexual harassment, was denied by the Defendants without any procedural opportunity to be heard either formally or informally.  A.R., supra.  Instead, in response to her "daily" allegations of harassment the Defendant simply relegated those complaints to "catty girl stuff," or asked her to leave the office and/or return to class.  Given the breadth of the Supreme Court's decision in Davis v. Monroe County Bd of Ed., 526 U.S. 629 (1999), decided about a year after the Second Circuit's decision in Bruneau, the Court should find that Bruneau is not well-settled law and allow Plaintiff's §1983 proceeding as an alternative claim, should the Court find the Title IX claims not actionable.

WHEREFORE, for the foregoing reasons the Plaintiffs' respectfully request the Court to find no material facts are in dispute with respect to Counts One and Four of the complaint and the Plaintiffs respectfully request judgment in their favor on those Counts and a hearing n damages thereon.

    Respectfully submitted,

    PLAINTIFFS

    By_____
    Lawrence W. Berliner
    Klebanoff & Alfano, P.C.
    Corporate Center West
    433 South Main Street Suite 102
    West Hartford, CT 06110
    Tel. No. (860) 313-5005
    Fed. Bar No. CT 7002

**CERTIFICATION OF SERVICE**

    A copy of the forgoing has been mailed by first class mail, postage prepaid, this 10th day of August, 2005 to Attorney Melinda Powell, 65 Wethersfield Avenue, Hartford, CT 06114 and Attorney John K. McDonald, Kernan & Henry, LLP, P. O. Box 2156, Waterbury, CT 06722.

                                                    _____

                                                  Lawrence W. Berliner
                                                  Klebanoff & Alfano, P.C.
                                                  433 South Main Street Suite 102
                                                  West Hartford, CT 06110