UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| L. S. PPA, MR. AND MRS. F.S. | } |
| | } |
| PLAINTIFFS | } CIVIL ACTION NO. |
| | } 3:02CV1386(SRU) |
| V | } SEPTEMBER 23, 2005 |
| NEW FAIRFIELD HIGH SCHOOL, NEW FAIRFIELD BOARD OF EDUCATION, CHRIS HOFFMAN AND JOSEPH GALLUCCI, IN THEIR OFFICIAL CAPACITY | } } } } } |
| DEFENDANTS | } |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.    Introduction**

On August 10, 2005, the Plaintiffs submitted a Motion for Summary Judgment and related pleadings requesting the Court to grant their Motion with respect to Count One and Count Four of the Complaint. The Defendants in their Motion for Summary Judgment dated August 3, 2005, have moved for Judgment with respect to Plaintiffs' Title IX peer to peer sexual harassment, Plaintiffs' claims arising under 42 U.S.C. §1983, and Plaintiffs' common law claims. For the reasons set forth herein, the Court should deny Defendant's Motion.

II.    **Argument**

    A.    **The Court Should Deny Defendant's Motion for Summary Judgment and Find That Plaintiff Was A Victim of Sexual Harassment in Violation of Title IX**

Title IX provides that "(n)o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. §1681(u). This statute is enforceable through an implied right of action. Gebser v. Lago Vista Sch. Dist., 524 U.S. 274 (1998); Franklin v. Guimett County Pub. Sch., 503 U.S. 60 (1992).

The Plaintiff has alleged that she was a victim of sexual harassment throughout the 2000-01 school year and the summer that preceded that school year. The Plaintiff and/or her parents met with the Defendant regarding their on-going concerns with peer to peer sexual harassment, physical and verbal threats, and sexual explicit and offensive graffiti and posters that degraded the Plaintiff on the basis of her sex.

In Norris v. Norwalk Public Schools, 124 F. Supp 2d 791 (2000) this Court discussed extensively the decision of Mennone v. Gordon, 889 F. Supp. 53 (D.Conn. 1995) in the context of Title IX the Defendant Norwalk Public School's motion to dismiss on whether individual school officials could be liable for violations of that federal statute. The Court concluded that liability under Title IX could be

established under <u>Mennone</u>, supra @ 56, if the individual defendant exercised some level of control over the program or activity in which the disability occurred. Plaintiff's Complaint is replete with allegations of peer to peer sexual harassment throughout the 2000-01 school year occurring at New Fairfield High School. The Defendant Gallucci testified as the Principal of New Fairfield High School (NFHS) that he was ultimately responsible for the school. <u>Gallucci Deposition</u> pp. 10-12, 91 (11/10/04). The Defendant Hoffman had similar responsibilities as an Assistant Principal at NFHS. <u>Hoffman Deposition</u> pp. 8-13 (8/6/04).

      Despite being the Principal and Assistant Principal at NFHS during the 2000-01 school year, the Defendants essentially assert that they should not be held liable in the absence of actual notice of Plaintiff's peer to peer sexual harassment, <u>Defendants' Memorandum of Law In Support of Motion for Summary Judgment</u> pp. 26-27; or that if harassment did occur, it was not in the nature of sexual harassment that would implicate Title IX, <u>Defendants' Memorandum of Law in Support of Motion for Summary Judgment</u> pp. 19-26; or regardless of whether sexual harassment did occur it was not severe enough to deprive the Plaintiff of her education, <u>Defendants' Memorandum of Law in Support of Summary Judgment</u> pp. 27-30, or that Plaintiff has failed to establish that the Defendants' acted with deliberate indifference. <u>Defendants' Memorandum of Law in Support of Motion for Summary Judgment</u> pp. 30-33.

### i. Notice

The Court can find as a matter of fact that Defendants had notice of Plaintiffs' complaints of peer to peer sexual harassment throughout the 2000-01 school year. The Plaintiff had testified that she had reported complaints to the Defendants each day and they would not always respond to her. Plaintiff's Deposition pp. 88-89 (2/18/04). Plaintiff's account was substantially corroborated by a fellow classmate Nicole Marvin who testified that the Defendants were aware of what was going on at NFHS but nothing resulted from meetings with the Defendants, Marvin Deposition pp. 29 (3/18/05). In response to Plaintiff's complaints, the Defendants were either non- responsive or nasty to her, that she was advised that she was in the school office too much, or that her complaints were relegated to "catty girl stuff." Plaintiff's Deposition pp. 68-69, 85-87, 88-89, 91-92 (2/18/04). The Defendants' school records established they had specific knowledge or that they had investigated over twelve (12) instances of peer to peer harassment, sexual explicit graffiti, sexual explicit posters, verbal or physical altercations, and destruction of Plaintiff's property and other incidents. Hoffman Deposition pp. 14-15, 36-37, 37-38, 43, 55, 76-79 (8/6/04); Gallucci Deposition pp. 24-25, 32, 44, 47, 52, 74-75, 77, 81. Attachments E, F, G, I to Plaintiff's Statement of Material Facts Not in Dispute (8/10/05).

Defendants apparently assert that they only had actual notice of sexual harassment alleged on March 29, 2001 and in April, 2001, Defendant's

<u>Memorandum of Law in Support of Motion for Summary Judgment</u> p. 26; therefore, Defendants had no notice. Defendants apparently have either misconstrued or misread the Complaint since the Plaintiff or her parents had met or attempted to meet with the Defendants on October 29, 2000, October 30, 2000, October 31, 2000, November 2, 2000, November 6, 2000, March, 2001, May 18, 2001, and June, 2001. Complaint ¶9, 10, 11, 12, 13, 14, 15, 18, 20, 23. Moreover, the Defendants have ignored their own testimony and school records regarding the nature and number of incidents that were investigated, discussed, or otherwise addressed by the school district, even if they elected to ignore Plaintiff's daily reports to them, or their meetings with Plaintiff's Parents. <u>Plaintiff's Deposition</u> pp. 50, 53, 68-69, 85-87, 88-89, 93-94 (2/18/04); See, Attachments E, F, G, I annexed to <u>Plaintiff's Statement of Material Facts Not in Dispute.</u> <u>Joan Stolfi Deposition</u> pp 121, 132-33, (2/18/04), <u>Hoffman Deposition,</u> supra; <u>Gallucci Deposition</u>, supra. Clearly, the Court can find that Defendants had <u>actual notice</u> of peer to peer sexual harassment allegations. <u>Davis v. Monroe,</u> 526 U.S. 629 (1999).

    ii.    **<u>The Harassment Alleged Was Sexual Harassment and Not Based Upon Personal Animus or A Failed Romantic Relationship</u>**

Defendants have attempted to re-cast the litany of Plaintiff's complaints involving sexual harassment, as incidents suggesting a break-up of a romantic relationship, <u>Defendants' Memorandum of Law in Support of Motion for summary Judgment</u> pp. 22, 26; jealousy based upon Plaintiff's attractive appearance, <u>Id. @</u> 26, or Plaintiff's attitude. <u>Id.</u> Defendants' suggest that the sexually explicit graffiti referring to the Plaintiff, the sexually offensive posters with Plaintiff's name and

5

telephone number, physical assaults, vandalism, verbal assault and other threats to personal safety and well being was based upon something other than her sex. <u>Defendants' Memorandum of Law in Support of Motion for Summary Judgment.</u> P.19. It should be immaterial if the peer to peer harassment was committed by students who were of the same or opposite sex as the Plaintiff, See, <u>Oncale v. Sundowner</u> 523 U.s. 75, 80 (1998); So long as the Defendants had actual knowledge or notice of the harassment. <u>Davis v. Monroe County</u> 526 U.S. 629, 642-46 (1999).

Defendants rely upon <u>Benjamin v. Metropolitan Sch. Dist.</u> 2002 WL 977661 (S.D. Ind. 2002) (Exhibit R annexed to <u>Defendants' Motion for Summary Judgment</u>) to support their claim. That Court required a Plaintiff to establish one (1) of three (3) factors in order to establish sex based harassment: 1) conduct motivated by sexual desire, 2) sex specific and derogatory terms to make it clear that a harasser was motivated by one's sex; or 3) evidence of how the harasser treated both sexes. The record in this matter is replete with specific and derogatory sexually explicit graffiti regarding the Plaintiff, that Defendants' had actual knowledge of its existing with specific references to the Plaintiff as "suicidal bitch", a "suicide bitch with STD's," a slut, whore, slut tease, as well as the infamous poster. <u>Marvin Deposition</u> pp. 10-11, 14-15, 20-21 (3/8/05); <u>Plaintiff's Deposition</u> pp. 50, 93-94, (2/18/04); <u>Gallucci Deposition</u> pp. 45-46, 47, 74-75, 77; <u>Hoffman Deposition</u> pp. 76-77 (8/16/04); Attachments E, F, G, and I to <u>Plaintiff's Statement of Material Facts Not in Dispute.</u> The Benjamin Court went on to posit a question as to whether

sexual explicit remarks such as "slut" or "whore" constituted nothing more than embarrassment or whether there was objectively offensive conduct that would deny a student educational benefit or access to education. Benjamin, supra @ page 6. In the present matter, the conduct complained of was not simply embarrassing, it caused the Plaintiff to cry and become emotionally upset, Marvin Deposition pp. 22-23 (3/8/05); caused the Plaintiff to seek out a school secretary and Guidance Counselor as zones of comfort in the maelstrom of NFHS each day; Plaintiff's Deposition pp. 69, 86-87, 89-91, 95-96, 98, 101-104, (2/18/04), Marvin Deposition pp. 36, 37, 38-39, 40-41 (3/8/05), Joan Stolfi Deposition pp 121, 129-30, 137-38, 149-50 (2/18/04), if it caused a suicide attempt. Burrachio Deposition pp. 27, 37, 42, 49-50, 51-52, (6.24/04); Attachments A, B, C to Plaintiffs' Statement of Material Facts Not in Dispute.

       The Defendant's cite to and quote extensive from Oncale v. Sundowner Offshore Services 523 U.S. 75, 80-82 (1998) on pages 20 to 22 in their Memorandum of Law in Support of Motion for Summary Judgment. While Oncale involves an employment discrimination case, the Court nevertheless stated, "The prohibition of harassment on the basis of sex requires neither asexually nor androgamy in the workplace, it forbids behavior so objectively offensive as to alter the conditions of the victim's workplace." If Plaintiff's public school is substituted in place of workplace, this Court can find that the peer to peer harassment coupled with the Defendants' failure or refusal to remediate the sexually offensive conduct, words, actions and other acts taken against the Plaintiff altered Plaintiff's "workplace."

### iii Adverse Educational Impact.

While the Defendants' have attempted to argue that the Defendants did not deprive Plaintiff of educational opportunities citing without any legal authority whatsoever that "teenagers are not a modicum of civility", Defendants' Memorandum of Law at 27, and that Plaintiff's would have to concede that Defendant's could not purge hallways of profane, rude, or offensive conduct. Id. In fact, the Plaintiff will make no such concession and if Defendants' 2000-01 Parent's and Student Handbook had any force or effect, it would have "purged" the precise conduct cited, since behavior that threatens the well being of an individual, fight or assault, verbal abuse, use of profanity, insubordination, willful damages to school or student property, lying, racial slurs, bullying, assaultive behavior, or threatening are all listed as proscribed conduct or actions on page 26 to 34 of the Handbook's "Disciplinary Guidelines." Attachment D to Plaintiffs' Statement of Material Facts Not in Dispute. However, the Defendant's took little or no action to enforce the "Disciplinary Guidelines," throughout the 2000-01 school year. That failure culminated with Plaintiff's suicide attempt on March 11, 2001 as the direct and proximate result of being bullied and sadistically treated and tortured by her peers. Burachio Deposition pp. 22, 37, 42, 49-50, 51-52 (6/24/04).

Defendants assert that Plaintiff's grades had not suffered. Defendants' Memorandum of Law at 29. Passing grades alone does not establish that a student is making appropriate educational progress. See, Bd. of Ed v. Rowley, 458

8

U.S. 176, 203 fn 25 (1982). "Educational performance means more than a child's ability to meet academic criteria. It must also include reference to the child's development of communication skills, social skills and personality ..." Mary P. v. Ill. State Bd. of Ed., 23 IDELR pp 1064, 1068, (N.D. Ill. 1996).[1] If the testimony of Dawn Burrachio is to be credited, as well as the reports of Dr Kessler, Danbury Hospital and/or Danielle Quigley, Attachments A, B, C, to Plaintiff's Statement of Material Facts Not in Dispute; Burrachio Deposition pp. 22, 37, 47-48, 49-50, 51-52, (6/24/01); then the Court can find a severe and adverse impact upon the Plaintiff's education at NFHS.

    **iii.**     **Deliberate Indifference**

Defendants argue that even if there was sexual harassment, they did not act with deliberate indifference. Defendants' Memorandum of Law in Support of Motion for Summary Judgment pp. 30-33. The Defendants have argued under Davis v. Monroe County 526 U.S. at 648, that they must merely respond to known peer harassment in a manner that is not clearly unreasonable. The record essentially established that the Defendants did little or nothing to address the Plaintiff's "daily" complaints of harassment. Plaintiff's Deposition pp. 28-89 (2/18/04); Marvin Deposition pp 29 (3/8/05). Instead, they informed the Plaintiff that she was spending too much time in the office, that Plaintiff should return to

---

[1] See, Stein, Sexual Harassment Erodes Notion that School is a Safe Place, Harvard Education Letter, Jan/Feb. 2000. ("Sexual harassment erodes the notion that school is a safe place to be... (It) interferes with everything that a school is supposed to do for you: teach, socialize, be a friendly place, make friends, trust adults.").

class, and the referred to matters involved "catty girl stuff." Plaintiff's Deposition pp. 68-69, 85-87, 88-89, 91-92, 98. (2/18/04). Marvin Deposition pp. 34, 40-41 (3/8/05); Hoffman Deposition pp 44-46 (8/6/04). As Dawn Burrachio testified, the bullying that Plaintiff had experienced at NFHS was not just evil, it was heinous and resulted in scars that would not go away. Burrachio Deposition pp 51-52 (6/24/04). Defendant Hoffman was aware that his inaction had placed Plaintiff under severe duress, stress and that she had feared for her safety in school. Hoffman Deposition pp 70-71 (8/6/04). Whether Defendants' intentions were clearly unreasonably, given their knowledge of the peer to peer harassment may present a contested factual issue if a subjective standard is utilized, however, Defendants' actions or inaction when measured objectively should be found to be "clearly unreasonable" Davis, supra @ 648; given the depth and breadth of the Defendants' knowledge of the harassment throughout the 2000-01 school year, coupled with their failure to completely and effectively utilize the "Disciplinary Guidelines" in the 2000-01 Student and Parent Handbook to address the proscribed conduct that Plaintiff reported to them "daily."

**B.      The Plaintiff Should Be Allowed to Proceed With §1983 Claims**

The Defendants' rely upon Bruneau v. South Kortn, Lt Central School District 163 F 3d 749 (2d Cir. 1990) cert den. 526 U.S. 1145 (1999) that Plaintiff's §1983 should be denied because such claims are subscribed under Title IX's provisions and the provisions of that federal statute provide Plaintiff with her sole and exclusive

remedy. Defendants' Memorandum of Law @ pp. 23-24. In the August 10, 2005 Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment, at pp 14-15, the Plaintiff had acknowledged the Second Circuit's decision. However, the Plaintiff had argued that given the breadth of the U.s. Supreme Court's decision in Davis v. Monroe County Bd of Ed., 526 U.S. 629 (1999) decided about a year after Breneau, the Plaintiff questioned whether Bruneau was well-settled law on §1983 jurisprudence in the context of a Title IX matter. Further, given the U.S. Supreme Court's recent decision in Jackson v. Birmingham Bd. of Ed. _ U.S. _, 2005 U.S. LEXCIS 2928 (March 29, 2005) construing broadly whether Title IX's proscription encompassed a male coach's claim of retaliation for complaining about sex discrimination in the inadequate allocation of public school resources for a girls basketball team, the Plaintiff posits the same question on whether Bruneau is well-settled law, given the breadth of the Supreme Court's decision in Jackson, supra.

In Norris v. Norwalk Bd of Ed., 124 F. Supp. 2d 791 (D. Conn. 2000) this Court recognized that Bruneau did not address the full extent that Title IX subsumes a §1983 claim against individual defendants. (citing Bruneau, at 755). Despite Defendants' artful attempt to 'constitutionalize' Plaintiff's federal statutory claims as violative of the Equal Protection Clause, Defendants' Memorandum of Law at pp. 33-34, the fact remains that in the Fourth Count of the Complaint, the Plaintiff had alleged that her right to a safe school environment free from sexual harassment were violated by Defendants' official actions, citing under color of

law. Complaint ¶ 42, 43, 44. [2] A claim based upon §1983 against individual defendants for violations of a federal statute such as Title IX, was not resolved by the Bruneau decision and the Second Circuit left that question open. Bruneau, supra @ 755. To the extent that the Defendants' have argued that Bruneau is applicable to either a school district, a school board, or constitutional deprivations, the Plaintiff will concede that Bruneau appears to be well-settled law. However, as to individuals such as the Defendants Hoffman and Gallucci or to claims based upon a federal statute, the Plaintiff does not make such a concession, and this Court should follow its persuasive precedent in Norris v. Norwalk Board of Education and deny Defendants' Motion for Summary Judgment.

Plaintiff's argument is buttressed in part by the recent decision of Scruggs v. Meriden Bd. of Ed. Civil Action 3:03 CV 2224 (PCD) (D. Conn 8/22/05) (attached) whereby the Court allowed a §1983 to proceed citing to Crispin v. Athanson, 275 F. Supp. 2d 240, (D. Conn. 2003) and De Shanny v. Winnebago County, 489 U.S. 189, 195 109 S. Ct 998 (1999) and allowed a "state created danger" exception. Scruggs, supra, slip op. at pp. 10-11. "It is when the state's actions 'increase the vulnerability of a private individual to harm, and that harm occurs, (that) section, 1983 liability may be had.' ... A plaintiff must allege that state officials 'in some way had assisted in creating or increasing the danger to the victim' to implicate one's

---

[2] The provisions of 42 U.S.C. §1983 provide inter alia that every person who under color of any statute caused the deprivation of rights secured by the Constitution

due process rights. (citation omitted)." Scruggs supra @ 11. Similarly, the Scruggs Court allowed the Plaintiff's Equal Protection claims to proceed because the Defendant school district had encouraged, permitted, or acquiesced in the harassment, bullying and assaults on the student on the basis of his disability, a protected status. Scruggs, supra @ 12. The Court should deny Defendants' Motion for Summary Judgment and allow her §1983 claims to proceed against the individual Defendants, and if the Court is inclined to revisit its decision in Norris, supra, against the Defendant school district, for the reasons set forth herein.

**C.    The Court Should Reject Defendants' Defense of Governmental Or Qualified Immunity**

The Court should reject Defendants' claim of qualified or governmental immunity. Defendants' Memorandum of Law at pp 38-39. The doctrine of qualified immunity shields government officials from damages in civil actions that do "... not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct 2727, 2738 (1982). Harlow had established an objective test as to whether the rights in question were clearly established at the time the action occurred and whether it was reasonable for Defendants to believe that their actions did not violate those rights. Id.

A statutory or constitutional right is clearly established if "... (i)he contours of the right were sufficiently clear that a reasonable official would understand what he is going violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct

---

and laws shall be liable to the party injured.

3034, 3039 (1987). Plaintiffs' Complaint has established the nature of the peer to peer sexual harassment that had occurred throughout the 2000-01 school year as alleged in the Amended Complaint and Defendants' repeated failures to remediate any of the complaints of sexual harassment presented the Plaintiff including but not limited to sexually offensive remarks, assaults, sexually explicit graffiti or posters and Defendants' response instead by advising that she was in the office "too much", or that she had to return to class, or that complaints asserted involved "catty girl stuff." Marvin Deposition pp. 40-41, (3/8/05); Plaintiff's Deposition pp. 69, 85-89, 91-92 (2/8/04). Further, the rights secured by Title IX have been in existence since at least 1972, and clarified again in 1997, 62 Fed. Reg. No. 49 pp. 12034-51 (3/13/97) and the Defendants acknowledged that they were aware of Title IX, had received training on Title IX, were aware of the school district's Title IX policy, and had received Circular letters published by the State Department of Education on local school districts' obligations to comply with Title IX's provisions. Hoffman Deposition pp. 87-92, (8/6/04); Gallucci Deposition pp. 17-19, 21, 84-85, (1/10/04); Attachment H, K, L to Plaintiffs' Statement of Material Facts Not in Dispute.

While there were some cases that questioned whether Title IX's provision covered peer to peer sexual harassment, See, Walton v. Alexander, 44 F. 3d 1297 (5th Cir. 1995); since the U.S. Supreme Court's decision in Davis v. Monroe County Bd. of Ed., 526 U.s. 629, 119 S. Ct. 1661 (1999), the Defendants knew or should have known of their obligations towards the Plaintiff with respect to her "daily requests,"

14

Plaintiff's Deposition pp. 88, 92 (2/18/04), for assistance with the peer to peer harassment.

In the recent case Scruggs v. Meriden Bd. of Ed., Civil Action No. 3:03 CV 2224 (PCD) decided on August 22, 2005 (attached), Judge Dorsey denied the defendant school district's Motion for Judgment based upon claims of qualified immunity and governmental immunity.  Scruggs, supra slip op @ pp. 24-28.  Scruggs dealt with the tragic circumstances involving a middle school student who was the subject of bullying, harassment, altercations, assaults and other threats on the basis of his disability.  Id. @ 3.  The student's parent met with the local school officials on several occasions in an effort to remedy these concerns.  Id.  Shortly after the last meeting between the student's mother and the school officials, the student committed suicide.  Id. at 4.

Scruggs commenced an action against the defendants alleging violations of 42 U.S.C. §1983; 42 U.S.C. §1985; 42 U.S.C. §1986; 14th Amendment; Rehabilitation Act, 29 U.S.C. §794; Americans with Disabilities Act, 42 U.S.C. §12101 et seq., and state common law negligence claims.  Id.  The Defendants moved to dismiss all of those claims pursuant to F.R. Civ. P. 12(c) and 12 (h)(3), based upon several claims including qualified immunity and governmental immunity.  In denying Defendants' defense of qualified immunity, the Court found that the rights alleged to have been violated were "sufficiently clear to school administrators and educators." Id. @ p. 26.  In reaching that conclusion the Court in Scruggs relied upon a series of cases including Rapkin v. Rocque, 228 F. Supp. 2d 142, 145-46 (D.Conn. 2002) and

Johnson v. Newburgh Enlarged Sch. Dist., 239 F. ed 246, 251 (2d Cir. 2001) to analyze whether the Meriden Public School defendants were entitled to qualified immunity by considering whether the conduct complained of that was attributable to the defendant was not prohibited by federal law, whether the plaintiff's rights were not clearly established at the time of the incident, whether defendants' actions were objectively reasonable, whether a reasonable person in the defendants' position would know about the appropriateness of his conduct under federal law, and whether there was an absence of legal precedent.  In rejecting each of the defendants' assertions, the Scruggs Court found that the plaintiff student had clearly established federal rights and that the rights at issue were sufficiently clear to the defendant school administrators.  Id. At pp. 25-26. "(S)tudents have clearly established rights under statutory schemes and the Constitution and legal precedents identifies those rights, <u>and the burden is not on the parents of these children to inform school administrators of those rights as suggested in the defendants' Memorandum.</u>"  Scruggs, supra, @ p. 26 (emphasis added).  The Scruggs Court also denied the defendant school district's claim of governmental immunity (and sovereign immunity) relying upon Purzycki v. Fairfield, 244101 (1998) and Burns v. Bd. of Ed., 228 Conn. 640 (1994).

   Scruggs, supra, slip op. @ 26-28.  In that case, the plaintiff had alleged that the defendant had failed to provide the student with a safe school environment, as well as failed to prevent the `acts and offenses' alleged in the Complaint.  Id. @ 26.  In response to defendant's defense of sovereign immunity and governmental

immunity, the Court found that the doctrine of sovereign immunity was inapplicable to a local board of education in their capacity of supervising students citing Purzycki v. Fairfield at 112. "That the bullying situation was enhanced by the fact that J.D. was learning disabled, does not take Count Five outside the realm of failure to supervise." Scruggs supra slip op. @ 27.

  The Court reached a similar result with the defendant Meriden's claim of governmental immunity. The Court recognized that such a defense is available if a local government agency misperforms a ministerial act as opposed to a discretionary act. Id. @ pp 27-28. (citing Burns, supra @ 645). In order to establish an exception to this defense, a plaintiff must prove "the imminent of any potential harm, the likelihood that harm will result form a failure to act with reasonable care, and the identifiability of a particular victim."  Burns, supra @ 646.  In denying defendant's motion to dismiss, the Scruggs Court found that because the student was a disabled student who was constantly bullied and harassed, he was an "identifiable victim."  Id. @ 28.  Further, the plaintiff had established that the student was exposed to imminent harm that made it more likely that he would be injured if the defendants failed to act with reasonable care. Id.

  In the present matter, the Plaintiff has sufficiently alleged that she was an identifiable victim of peer to peer sexual harassment throughout the 2000-01 school year, who was injured physically and emotionally as the direct and proximate result of the Defendants' failure to act or act with reasonable care. The Defendants investigation of at least twelve separate instances of sexual

harassment involving altercations, graffiti, posters, property destruction and verbal or physical abuse. Gallucci Deposition pp. 24-25, 32, 44-47, 52, 74-75, 77, 81 (11/10/04) Attachments E, F, G, I to Plaintiffs' Statement of Material Facts Not in Dispute. The Plaintiff testified that she had presented "daily" complaints to the Defendants and they would either refuse to see her, directed her back to her classroom, advised her she was spending too much time in the office, or the substance of her complaint could be relegated to "catty girl stuff." Plaintiff's Deposition pp. 68-69, 85-87, 88-89, 91-92, 93-94. (2/18/04) Plaintiff's accounts were corroborated by her classmate Nicole Marvin. Marvin Deposition pp. 10-11, 14-15, 20-21, 29, 39, 40-41. (3/8/05). The Court should deny Defendants' Motion for Summary Judgment predicated upon the defense of governmental immunity or qualified immunity.

### III.  Conclusion

The Court should grant Plaintiffs' Motion for Summary Judgment for the reasons set forth herein and those presented to the Court in Plaintiffs' August 10,

2005 Motion for Summary Judgment and Memorandum of Law in Support thereof.

The Court should deny Defendant's Motion for Summary Judgment.

                PLAINTIFFS

                By_____
                  Lawrence W. Berliner
                  Klebanoff & Alfano, P.C.
                  Corporate Center West
                  433 South Main Street Suite 102
                  West Hartford, CT 06110
                  Tel. No. (860) 313-5005
                  Fed. Bar No. CT 7002

## CERTIFICATION OF SERVICE

     A copy of the forgoing has been mailed by first class mail, postage prepaid, this 23rd day September, 2005 to Attorney Melinda Powell, 65 Wethersfield Avenue, Hartford, CT 06114 and Attorney John K. McDonald, Kernan & Henry, LLP, P. O. Box 2156, Waterbury, CT 06722.

                _____

                Lawrence W. Berliner
                Klebanoff & Alfano, P.C.
                433 South Main Street Suite 102
                West Hartford, CT 06110